## SCOTT *v.* HARBOR.

In this case—slander—the Court below having charged the jury that the evidence of defendant to prove that plaintiff was guilty of stealing hogs was not sufficient to constitute any defense : *Held*, that the charge was too strong; that there was evidence sufficient for the jury to pass upon ; and the judgment for plaintiff was therefore reversed and the cause remanded.

*Held, further*, that the charge of the Court that the *marking* of defendant's hogs, if done by plaintiff, was no proof of asportation, was erroneous, because if plaintiff took possession of defendant's hogs unlawfully, with the intent to mark them with his own mark, and he did so mark them in order to claim and use them as his own, knowing them to belong to defendant, the offense of larceny would be complete ; and it was for the jury to determine whether plaintiff did this.

APPEAL from the Sixth District.

Action of slander ; the words alleged in the complaint to have been spoken of plaintiff by defendant being as follow : " Scott [meaning plaintiff] has stolen hogs, and now has them in his possession ; " " Scott is a thief, he has stolen hogs, and he has taken up strays and illegally disposed of them ; " " He stole hogs ; " " Scott is a murderer, and I can prove it ; " " Scott perjured himself in relation to the line between his land and mine ; " " Scott swore to a lie concerning the boundary line between his land and mine, and my business in town now is to go before the Grand Jury to get him indicted ; " " Scott is a hog thief, horse thief, and stole cattle."

Scott *v.* Harbor.

Defendant in his answer admits the speaking of the words, except as to stealing horses; and avers that they are true, and were spoken without malice, but with the intent to charge plaintiff with the offenses embraced by the language.

The following, with other evidence, was introduced on the trial: Haskins testified that there was a stray mare on the river in 1857 ; he purchased a place of one Butler about that time, with two mares ; Butler was about to post the stray, but as he sold out to witness, he transferred with the two mares his right to the posting the stray; the consideration for all the mares was two hundred and twenty-five dollars; his place so purchased from Butler adjoined plaintiff's, Scott's, above where the stray mare run ; a few Sundays after, witness saw Scott on the mare ; he, Scott, then remarked that he had or was going to post her ; soon after the mare came running up with a saddle and bridle on, Butler caught her and took off the saddle and bridle ; Scott came up apparently excited, and exclaimed : " What are you doing with that mare ? I will see what I can do with you fellows." Butler then replied: " I have sold my right to witness, and have a better right than you have ;" said he had fed her to the value of twenty-five dollars. Scott replied, if Butler kept the mare he would see what he could do with " you fellows," meaning Butler and himself; some other words followed. Scott said he had confined her for five days. Witness then refused to have anything further to do with said mares. Butler then sold the two mares to Scott. Scott kept the mare tied in the bushes in a place not likely to be seen ; witness saw him leading the mare to the place where he kept her tied ; it was a place where the owner would not be likely to see her. Before Scott pretended to have taken up the mare, witness told him he had purchased the chance of the mare, and intended to post her ; and that he, Scott, came by her in a way no honest man would. This mare had generally run with Scott's mare, mostly on Butler's and Preuitt's places ; Scott then had but one or two horses, they run on the open plains ; had never seen the stray mare on Scott's place but once or twice before he tied her in the bushes ; thought when he saw her tied there the object was to hide her ; she was tied about seventy-five yards off the road ; I saw her from the road as I was going along ;

it was the main traveled road ; the place where she was tied was in Scott's door yard or garden ; corn and other products were growing there ; this was before the conversation between him and Butler, but after witness purchased from Butler and had made it known to Scott ; Scott's general character is bad.

Dougherty, another witness, lives on the same place with defendant ; says defendant had a black hog which was fed in the morning ; after going out it returned marked in plaintiff's mark, and had also been castrated ; it had been but recently done, as the hog was still bleeding from the marks ; the hog could not have been marked on defendant's place, otherwise he could have heard the noise made. When the water came up, Scott drove some cattle to higher land some four miles off, amongst which was a red and white spotted three-year-old steer, which did not belong to him. After the water went down he drove it back again. He also drove a cow down to his ranch not in his mark or brand ; the cow had a calf there. Witness did not know whose cattle they were.

John H. Dougherty shows that defendant had two sows which had pigs *eleven* in number ; they were absent, and when they came up, *twelve* of them were marked in Scott's mark. This was in February, 1858 ; when they came home the marks were fresh and still bleeding. Witness knew the hogs to belong to defendant ; he, the defendant had purchased one of the sows from Scott himself, the other from Herbert ; they were tame hogs, and came up to be fed ; the pigs would at that time weigh twenty pounds each ; the pigs followed the sows and sucked them. Scott lived only half a mile from defendant, where witness resided also. Scott knew defendant's stock ; a man by the name of Egleston lived at Scott's. Scott's mark was a crop off the right ear, and Harbor's a crop off the right ear and a small slit in the end of the cropped ear ; these were all the hogs that Harbor had at that time ; the flesh mark of the hogs was black and white spotted.

Mr. Hancock. He had found a calf of his which he had neglected to brand ; it came home branded in Scott's brand ; the right ear was cut off ; his brand is J. M. Scott's apology was that he had bought some calves in town and took them home ; he found this calf on the premises ; he drove it up and marked it.

Scott *v.* Harbor.

Witnesses were introduced on both sides as to character—the one proving bad, the other good.

The Court, among other things, charged as follows:

" Plaintiff charges that defendant spoke of and concerning him certain words which he alleges are slanderous, and which words charge two distinct crimes.   The words alleged to have been spoken are in themselves slanderous unless true.   It was not requisite for the plaintiff to allege any special damages; the words charged imply crime—such crimes as are known and punished by our laws.

" Plaintiff avers that defendant accused him of stealing hogs belonging to him, the defendant.   Defendant admits that he so stated, and sets up in justification that the plaintiff did steal his hogs.   There is, then, no issue as to whether the words were spoken or not, because it is admitted ; and I will examine the question whether there is any or a sufficient amount of evidence by which you could show that plaintiff was guilty of the crime of larceny.   *  *  *   Nothing would be a complete defense to this charge upon the part of the plaintiff, except complete proof upon the part of the defendant that the plaintiff was guilty of larceny within the statutory meaning of the term."

*  *  *   " To make out that offense, two circumstances must be concurrent.   First, there must be an asportation by the defendant; secondly, it must be with felonious intent.   There is no proof whatever, other than the circumstance that the ears cropped off are the mark of Scott, to connect Scott with the act of cutting off their ears.   If, however, it were found he had cut off the ears of the hogs, it might have done them injury ; but then there would have been no asportation, with felonious intent, sufficient to go to a jury, upon which they could find that the plaintiff had been guilty of larceny.   Upon these matters, it is the duty of a party who charges crime upon another to ascertain first if it is true ; and if he accuses another of a crime when, technically or legally, a party is not guilty, he must take the consequences in an action of slander. Much proof has been offered in this connection concerning a steer and a cow which were said to have been upon the ranch of Scott; but the pleadings do not raise any question concerning the cow or the steer in justification of the defendant.   It has been admitted,

however, by consent of plaintiff, with the view of having the matter wholly before the jury.   There is no justification whatever proved concerning these.   They were not, in the first place, set up by defendant properly in his answer, and there is no proof sufficient to justify defendant in making the charge."

\* \* \* "And I now submit the case to you upon the issues only, as they stand upon the proof and the pleadings, which are: Frst—Did the defendant accuse the plaintiff of murder ?   Second —upon which will arise the measure of damages—What damage has the plaintiff sustained by reason of the words spoken ?   For I instruct you that the speaking of these words by the defendant, no matter what might be the character of the plaintiff, would, without justification, entitle him to nominal damages.   You will, in any event, find for the plaintiff, and assess such damages as you think he has sustained in the community by this language used by the defendant, ranging anywhere between nominal damages and the $6,000 claimed by the plaintiff.   This matter is wholly in your charge, and may be said to be the only question you will have to determine in this case, for the defendant has, as I have instructed you, wholly failed to prove the matters set up in justification."

Defendant excepted specially to the different portions of the charge.   Verdict for plaintiff, and damages assessed at $1,200. Judgment accordingly.   Motion for new trial having been overruled, defendant appeals.

*L. Sanders, jr., John Heard* and *J. B. Harmon,* for Appellant.

*E. B. Crocker,* for Respondent.

BALDWIN, J. delivered the opinion of the Court—COPE, J. concurring.

We think the learned Judge below instructed the jury too strongly in favor of the plaintiff.   We have examined the evidence, and without expressing any opinion as to the weight to be attached to the proofs in connection with the charges of hog stealing, we think the Court should not have told the jury that the evidence constituted no defense to the action.   The testimony of the witness Dougherty,

Scott v. Harbor.

taken in connection with some of the other proof, might, if believed by the jury, to say the least, place the plaintiff's case and conduct in a very unfavorable light.    The fact that the hogs were the defendant's, and that so many of them were marked with the plaintiff's mark; that the hogs were known to the plaintiff; that the parties lived within a half a mile; the testimony of Hancock that the same change was made in the mark of one of his calves; the proof as to the stray mare by the witness Haskins—all these things, taken in connection with proof of the alleged bad character of the defendant, if believed by the jury who were the proper judges of the weight of this testimony, might have been considered by them as placing the plaintiff's claim for recovery in a very different light from that in which they probably considered it after receiving the charge of the Judge.    We do not think the Judge was correct in charging that the marking of the hogs, if done by the plaintiff, was no proof of asportation; for if the hogs were taken possession of by the plaintiff unlawfully, with the intent to mark them in his own mark, and he did so mark them in order to claim and use them as his own, knowing them to belong to defendant, this would seem to make the offense of larceny complete.    Whether he did this it was for the jury to determine from the facts before them.    But these facts certainly go, if believed, to show a different case from that of a wanton assault upon the character of a man free from all suspicion of impropriety in relation to his neighbor's property.

Judgment reversed and cause remanded.